UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NOAH RICHARD LOVELL, III,

                Petitioner,

                                    Case No. 15-11541

v.                                 Honorable Linda V. Parker

PAUL KLEE,[1]

                Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

      Petitioner Noah Richard Lovell, III ("Petitioner"), through counsel, has filed

a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is

challenging his Michigan state court convictions for armed robbery in violation of

Michigan Compiled Laws § 750.529, unlawful imprisonment in violation of

Michigan Compiled Laws § 750.349b, torture in violation of Michigan Compiled

Laws § 750.85, and first-degree home invasion in violation of Michigan Compiled

Laws § 750.110a(2). For the reasons stated below, the Court is denying Petitioner

habeas relief. The Court also is denying Petitioner a certificate of appealability.

---

[1] The Court sua sponte amends the case caption to reflect the warden of the
Lakeland Correctional facility in Coldwater, Michigan, where Petitioner currently
is confined. *See* Rule 2(a) of the Rules Governing § 2254 Cases.

## I. Background

Petitioner was convicted of the above-listed offenses following a jury trial in the Circuit Court for Livingston County, Michigan. Petitioner was tried with his co-defendant, Harry Riley. The trial court sentenced Petitioner, as a fourth habitual offender, fourth offense, to concurrent terms of imprisonment of 36 years and 8 months to 75 years for his armed robbery and torture convictions and 10 to 15 years for his unlawful imprisonment conviction, and a consecutive term of imprisonment of 13 years and 4 months to 20 years for the first-degree home invasion conviction. Petitioner's convictions and sentence were affirmed on direct appeal. *People v. Riley*, No. 295838, 2011 WL 4501765 (Mich. Ct. App. Sept. 29, 2011), *lv. den.*, 810 N.W.2d 582 (Mich. 2012).

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals when denying Petitioner's appeal:

> This case arises out of the armed robbery, unlawful imprisonment, torture, and home invasion of an 84-year-old victim. On the day of the incident, Riley went to the victim's back door wearing a work vest and a hard hat under the guise that he worked for a utility company and wanted to look at the victim's property. The victim walked his property with Riley for approximately 45 minutes. Riley was talking on his cellular telephone during a substantial portion of that time. Cellular telephone call logs showed that Lovell's telephone was in the vicinity of the victim's house and that numerous calls were made to Riley at the time of the crime. Riley's vehicle was rented by Lovell.

Riley followed the victim into his house; at that point, the victim noticed a pry bar on the table in his dinette. As the victim reached for the pry bar, Riley punched the victim in the face so hard that it knocked his dentures out of his mouth and knocked his glasses off of his face. Riley then grabbed the victim and pushed him down the stairs. At the bottom of the stairs, Riley continued to beat the victim, punching and kicking his face and body. Riley repeatedly demanded to know where the victim kept his money, and threatened to kill him. Riley also repeatedly poked the victim's arms, chest, and neck with a knife. The victim lost consciousness several times during the beating. Riley then sat the victim in a chair and bound his wrists and ankles with duct tape. Riley kicked the victim's face with such force that if [sic] left a shoe print. During the incident, the victim heard a second individual come halfway down the stairs; from his vantage point, the victim could only see the second individual, a white male, from the waist down. The second individual threatened to kill the victim if he did not reveal the location of the money. Meanwhile, Riley took the victim's coin collection. The victim had a broken jaw, broken nose, cracked eye sockets, three broken ribs, and blood on the brain. The victim stayed in the hospital for over a week, and then spent nearly two months in a rehabilitation center.

The next day, Lovell and Riley met with George Wilson who heard them discussing how they were going to sell coins. Wilson also heard Riley berate Lovell for his time-consuming method of ransacking drawers. A receipt from a hardware store indicating the purchase of a hard hat, pry bar, and work gloves was found in the victim's driveway, and Lovell was identified as the individual who purchased the goods.

*Riley*, 2011 WL 4501765, at *1-2. These facts are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009).

Petitioner filed a post-conviction motion for relief from judgment in the state trial court (ECF No. 5-20), which the court denied. (ECF No. 5-21.) The Michigan appellate courts denied Petitioner leave to appeal. *People v. Lovell*, No. 319508 (Mich. Ct. App. June 3, 2014) (ECF No. 5-22); *lv. den.* 858 N.W.2d 53 (Mich. 2015).

Petitioner asserts the following grounds in support of his application for federal habeas relief:

I.     Mr. Lovell is entitled to a new trial under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution where newly discovered evidence after trial—co-defendant Riley's affidavit exonerating him and prosecution witness Mr. Wilson's affidavit recanting his trial testimony against him—show a fair probability that a different result would be rendered on retrial.

II.    Mr. Lovell was denied the effective assistance of counsel under the Sixth and Fourteenth Amendments to the U.S. Constitution when his trial counsel, before testimony was given, failed to renew his motion for separate trials or juries when co-defendant Riley offered to testify at trial to exonerate Mr. Lovell.

III.    Prosecutorial misconduct in rebuttal closing argument deprived Mr. Lovell of his right to a fair trial under the Fourteenth Amendment to the U.S. Constitution when the prosecutor shifted the burden of proof and commented on his silence in violation of his privilege against self-incrimination under the Fifth and Fourteenth Amendments to the U.S. Constitution.

IV.    Mr. Lovell was denied his right to due process under the Fourteenth Amendment to the U.S. Constitution because the evidence was insufficient to sustain the convictions.

V.   Mr. Lovell was denied due process under the Fourteenth Amendment to the U.S. Constitution when he was sentenced on the basis of inaccurate information in the presentence report that was improperly used to support an upward departure in his sentences.

VI.  Mr. Lovell was denied the effective assistance of counsel under the Sixth and Fourteenth Amendments to the U.S. Constitution when his appellate counsel failed to raise the issues presented in the motion for relief from judgment under MCR 6.500 *et al*, which were also presented to the Michigan Court of Appeals and the Michigan Supreme Court on appeal and raised in the present habeas petition.

## II.   Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A decision of a state court is "contrary to" clearly

established federal law if the state court arrives at a conclusion opposite to that

reached by the Supreme Court on a question of law or if the state court decides a

case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

"[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

### III. Discussion

#### A. Actual Innocence Claim

Petitioner claims that he is entitled to habeas relief because he is actually innocent of the charges. Petitioner submits two affidavits in support of this claim. In one affidavit, Petitioner's co-defendant, Mr. Riley, asserts that Petitioner was not involved in the planning or commission of the crimes. (*See* ECF No. 5-20 at Pg ID 2646.) Mr. Riley's affidavit was signed and dated January 3, 2013, over three years after Petitioner was convicted. (*Id.*) The other affidavit is a declaration from prosecution witness, George Wilson, in which Wilson claims that he testified falsely at Petitioner's criminal proceedings (i.e., the evidentiary and preliminary hearings and trial) about Petitioner's involvement in the crimes. (*Id.* at Pg ID 2649.) Mr. Wilson blames his false testimony on undescribed police coercion. (*Id.*) Mr. Wilson's declaration is dated June 30, 2010. (*Id.*)

Petitioner first presented Mr. Riley's affidavit and Mr. Wilson's declaration when he moved for relief from judgment in the state trial court. Petitioner also attempted to present Mr. Wilson's declaration during his appeal of right with the Michigan Court of Appeals. The Michigan Court of Appeals refused to consider Mr. Wilson's declaration because it was not part of the lower court record. *Riley*, 2011 WL 4501765, at *8.

In *Herrera v. Collins*, 506 U.S. 390 (1993), the Supreme Court held that "[c]laims of actual innocence based on newly discovered evidence" fail to state a claim for federal habeas relief "absent an independent constitutional violation occurring in the underlying state criminal proceeding."[1] *Id.* at 400; *see also House v. Bell*, 547 U.S. 518, 554-55 (2006) (declining to answer the question left open in *Herrera* of whether a habeas petitioner may bring a freestanding claim of actual innocence). Federal habeas courts "sit to ensure that individuals are not imprisoned in violation of the Constitution, not to correct errors of fact." *Herrera*, 506 U.S. at 400 (citations omitted); *see also McQuiggin v. Perkins,* 569 U.S. 383, 392 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence"). Freestanding claims of actual innocence are thus not cognizable on federal habeas review, absent independent allegations of constitutional error at trial. *See Cress v. Palmer,* 484 F.3d 844, 854-55 (6th Cir. 2007) (collecting cases).

Furthermore, a long-delayed affidavit which seeks to exonerate the defendant or petitioner and shift the blame for the crime to another person is "treated with a fair degree of skepticism." *Herrera*, 506 U.S. at 423; *see also*

---

[1] The *Herrera* Court assumed without deciding that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." 506 U.S. at 417. The Supreme Court, however, has not extended such a freestanding claim beyond the death penalty context and Petitioner's case is not a capital case.

*Lewis v. Smith,* 100 F. App'x 351, 355 (6th Cir. 2004) (holding that it was proper for the district court to reject as suspicious a witness' recanting affidavit made two years after the petitioner's trial). In particular, "[p]ostconviction statements by codefendants [which attempt to exculpate a criminal defendant] are inherently suspect because codefendants may try to assume full responsibility for the crime without any adverse consequences." *See Allen v. Yukins,* 366 F.3d 396, 405 (6th Cir. 2004) (post-conviction affidavits of habeas petitioner's two codefendants were legally insufficient to establish that she was actually innocent, so as to toll the AEDPA's statute of limitations; affidavit was inherently suspect because the codefendant could have signed it to help petitioner without endangering his own interests); *In re Byrd,* 269 F.3d 561, 574 (6th Cir. 2001) (petitioner did not satisfy the miscarriage of justice exception necessary to reach the merits of a successive habeas petition, where the evidence of actual innocence was an affidavit from a co-defendant which was made six years after the co-defendant had been convicted and sentenced for his part in the crime and the co-defendant's confession was made only after he was no longer subject to further punishment for his actions for these crimes).

Mr. Riley, Petitioner's co-defendant, signed and dated his affidavit exonerating Petitioner over three years after their trial. In the affidavit, Mr. Riley does not offer any convincing explanation as to why he waited so long to come

forward and attempt to exonerate petitioner.  Furthermore, the statements come after Mr. Riley was sentenced to 75 to 115 years in prison and is no longer subject to any further punishment or other adverse consequences for his actions. Affidavits from fellow inmates that are created after trial are not sufficiently reliable evidence to support a finding of actual innocence. *See Milton v. Secretary, Dep't Of Corr.,* 347 F. App'x 528, 531-32 (11th Cir. 2009).  The fact that Mr. Riley did not come forward in a timely manner, when he claimed he knew Petitioner was wrongly convicted undermines his credibility, particularly when there is also no indication that Mr. Riley ever contacted the police or law enforcement about his allegedly exculpatory information. *See Ashmon v. Davis*, 508 F. App'x 486, 488 (6th Cir. 2012).

When Petitioner presented Mr. Riley's affidavit in support of his motion for relief of judgment, the trial court judge found that the evidence was not newly discovered because "if the Defendant was truly not involved with the crime, he was aware or should have been aware that Riley had the ability to offer the testimony contained in the current declaration."  *People v. Lovell*, No. 09-18082-FC, at *6 (ECF No. 5-21 at Pg ID 2655.)  The trial court judge further found that "[i]n the face of all the other circumstantial evidence connecting the Defendant to the crime, it does not appear Riley's testimony would render a different result." *Id.*

This Court agrees that Riley's affidavit is not "newly discovered" evidence that would have rendered a different result.

The Court similarly views Mr. Wilson's declaration with "extreme suspicion." *United States v. Willis*, 257 F.3d 636, 645 (6th Cir. 2001) ("[A]ffidavits by witnesses recanting their trial testimony are to be looked upon with extreme suspicion.") (internal quotation marks omitted); *United States v. Chambers*, 944 F.2d 1253, 1264 (6th Cir. 1991) (stating that "[r]ecanting affidavits and witnesses are viewed with extreme suspicion"), superseded by statute on other grounds as recognized in *United States v. Avery*, 128 F.3d 966, 972 (6th Cir. 1997). Mr. Wilson's recantation is also suspect because his trial testimony was consistent with other evidence and testimony presented in the case, while his recantation is inconsistent with such evidence. *See e.g., Allen v. Woodford*, 395 F.3d 979, 994 (9th Cir. 2005) (uncorroborated recantation is "even more unreliable" where trial testimony was consistent with other evidence and recantation was not). Moreover, Mr. Wilson's declaration is dated June 30, 2010, before Petitioner's direct appeal became final. As such, it is not "new" evidence for purposes of establishing actual innocence. *Moore v. Woods*, -- F.3d --, 2018 WL 3089822, at \*3 (6th Cir. June 20, 2018).

For these reasons, the Court concludes that Petitioner is not entitled to relief on his actual innocence claim.

**B.      Ineffective Assistance of Trial Counsel Claim**

Petitioner alleges that he was denied the effective assistance of counsel when his trial attorney failed to renew his motion for severance.  Respondent contends that this claim is procedurally defaulted due to Petitioner's failure to provide legal support for his claim in the state court.

Petitioner initially raised this ineffective assistance claim in his motion for relief from judgment.  In rejecting the claim, the state trial court judge found that Petitioner waived it and another ineffective assistance of counsel claim by failing to provide citations to the record or any legal authority (besides a general citation to *Strickland v. Washington*, 466 U.S. 668 (1984), and *People v. Ginther*, 212 N.W.2d 922 (1973)).  *People v. Lovell*, No. 09-18082-FC, at *7-8 (ECF No. 5-21 at Pg ID 2657).  When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless the petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986).

In an extraordinary case, however, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). To be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998).

Under Michigan law, a party who fails to develop any argument or cite any authority in support of his or her claim waives appellate review of the issue. *People v. Griffin*, 597 N.W.2d 176, 186 (Mich. Ct. App. 1999). "A party may not merely state a position and then leave it to [the reviewing court] to discover and rationalize the basis for the claim." *Id.* (citations omitted). A state court conclusion that an issue was waived is considered a procedural default. *See e.g. Shahideh v. McKee*, 488 F. App'x 963, 965 (6th Cir. 2012).

As cause for the procedural default, Petitioner argues that his post-conviction counsel was ineffective for failing to adequately brief Petitioner's claim based on trial counsel's failure to renew the request for severance. Petitioner cannot rely on ineffective assistance of post-conviction counsel as cause because

there is no constitutional right to an attorney in post-conviction proceedings.[2] *See*

*Coleman,* 501 U.S. at 752-53, *see also Landrum v. Mitchell,* 625 F.3d 905, 919

(6th Cir. 2010). Because Petitioner has not demonstrated any cause for his

procedural default, it is unnecessary to reach the prejudice issue regarding his

second claim. *Smith*, 477 U.S. at 533.

Additionally, for the reasons asserted earlier, Petitioner does not present any

new reliable evidence to support an assertion of innocence allowing this Court to

consider his claim as a ground for a writ of habeas corpus in spite of the procedural

default.

In short, the Court finds that Petitioner's second claim is procedurally

defaulted.

## C.     Prosecutorial Misconduct Claim

Petitioner claims he was denied a fair trial because of prosecutorial

misconduct.

"On habeas review, claims of prosecutorial misconduct are reviewed

deferentially." *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003) (citing

*Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). A prosecutor's improper

---

[2] The Supreme Court has stated an exception to this rule for claims that could not have been raised on direct appeal. *Martinez v. Ryan*, 566 U.S. 1 (2012). In Michigan, however, defendants may assert ineffective-assistance claims on direct appeal. *Bell v. Howe*, 701 F. App'x 408, 413 (6th Cir. 2017) (citing *Taylor v. McKee*, 649 F.3d 446, 452 (6th Cir. 2011)). As such, Petitioner cannot rely on his claim of ineffective assistance of post-conviction counsel to excuse his default.

comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Darden*, 477 U.S. at 181 (additional citation omitted)). Therefore, a claim of prosecutorial misconduct provides a basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974). Moreover, to obtain federal habeas relief on a prosecutorial misconduct claim, the petitioner must show that the state court's rejection of the claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting *Harrington*, 562 U.S. at 103).

Petitioner first contends that the prosecutor committed misconduct in closing rebuttal argument by shifting the burden of proof to Petitioner by stating: "You [referring to defense counsel] sat and attacked everybody in this case and you didn't once tell us what did your client do. What's he responsible for?" (11/4/09 Trial Tr. at 217, ECF No. 5-14 at Pg ID 2212.) The trial court instructed the jury that Petitioner was presumed innocent and that the prosecutor had the burden of

proving Petitioner's guilt beyond a reasonable doubt.[2]  (*Id.* at 99, Pg ID 2094.)  The

trial court further instructed the jury:

> Next section, defendant not testifying.  Every defendant
> has the absolute right not to testify.  When you decide the case
> you must not consider the fact that defendants Riley and Lovell
> did not testify.  It must not effect your verdict in any way.

(*Id.* at 100, Pg ID 2095.)  Any possible prejudice that might have resulted from the

prosecutor's comment was cured by the trial court's instructions regarding the

proper burden of proof.  *See Scott v. Elo,* 302 F.3d 598, 603-04 (6th Cir. 2002)

(denying habeas relief and concluding that even if prosecutor committed

misconduct during closing argument, it was not an error that "jury instructions

could not cure."); *see also United States v. Carter*, 236 F.3d 777, 786-87 (6th Cir.

2001) (finding that the prosecutor's misstatement during closing arguments

regarding witness's testimony was inherently prejudicial to the defendant and

indicating that such prejudice could have been cured or at least minimized by

curative instructions to the jury, but concluding that no instructions directed at the

misstatements were given).

Petitioner further alleges that the prosecutor committed misconduct by

commenting on Petitioner's pre-arrest silence in response to comments by co-

defendant Riley.  Petitioner contends that "co-defendant Riley's alleged utterances,

---

[2] The judge in this case instructed the jurors prior to closing arguments.

as reported by Mr. Wilson, were improperly used against [him] as an 'adoptive admission,' even though he said nothing in reply and thus there was no indication that he assented to the statements made." (Habeas Pet. at 35, ECF No. 1-1 at Pg ID 53).[3]

The Supreme Court has held that prosecutors may use a defendant's pre-arrest silence as substantive evidence of his guilt so long as the defendant did not expressly invoke his right to remain silent. *Salinas v. Texas*, 133 S. Ct. 2174, 2179, 2184 (2013); *see also Abby v. Howe*, 742 F.3d 221, 228 (6th Cir. 2014). When viewed in context, the prosecutor's comments referred to Petitioner's silence in response to Lovell's statements the day after the incident and before he was arrested or invoked his right to remain silent.

---

[3] Respondent argues that this second prosecutorial misconduct claim is procedurally defaulted because it was never exhausted with the state courts and Petitioner no longer has an available state court remedy to exhaust the claim. Respondent, however, acknowledges that Petitioner did allude to the claim in his post-conviction motion for relief from judgment. In any event, a habeas petitioner's failure to exhaust his or her state court remedies does not deprive a federal court of its jurisdiction to consider the merits of the habeas petition. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). An unexhausted claim may be adjudicated by a federal court on habeas review if the unexhausted claim is without merit, such that addressing the claim would be efficient and would not offend the interest of federal-state comity. *Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); see also 28 U.S.C. § 2254(b)(2)(habeas petition may be denied on the merits despite the failure to exhaust state court remedies). Even if the claim is unexhausted, the claim is without merit.

For these reasons, Petitioner is not entitled to relief on his prosecutorial

misconduct claim.

### D.     Sufficiency of the Evidence Claim

Petitioner next claims that there was insufficient evidence to convict him.

"[T]he Due Process Clause protects the accused against conviction except

upon proof beyond a reasonable doubt of every fact necessary to constitute the

crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970).  When

reviewing a sufficiency of the evidence claim, the court must ask "whether, after

viewing the evidence in the light most favorable to the prosecution, *any* rational

trier of fact could have found the essential elements of the crime beyond a

reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in

original).  The court does not "ask itself whether *it* believes that the evidence at the

trial established guilt beyond a reasonable doubt." *Id.* at 318-19 (emphasis in

original).

A federal habeas court may not overturn a state court decision that rejects a

sufficiency of the evidence claim merely because the federal court disagrees with

the state court's resolution of the claim.  Instead, a federal court may grant habeas

relief only if the state court decision was an objectively unreasonable application

of the *Jackson* standard.  *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011).  "Because

rational people can sometimes disagree, the inevitable consequence of this settled

18

law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* For a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under AEDPA." *Id.*

Petitioner argues that there was insufficient evidence to establish his identity as one of the victim's assailants. Petitioner also contends that the evidence presented was insufficient to sustain his convictions. Petitioner does not contest the elements of the charged offenses; rather, he argues that there was insufficient evidence to find him guilty beyond a reasonable doubt of aiding and abetting his co-defendant in the commission of the crimes for which he was convicted.[3]

The Michigan Court of Appeals found strong circumstantial evidence supporting Petitioner's identity as a principal and an aider-and-abettor:

---

[3] To find a defendant guilty of aiding and abetting in the commission of a crime, the prosecutor must show that: (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement. *Riley v. Berghuis,* 481 F.3d 315, 322 (6th Cir. 2007) (citing *People v. Carines*, 597 N.W.2d 130, 135 (1999)).

Lovell argues that there was no evidence that he was in the victim's house during the crimes, or was Riley's accomplice. Thus, he is challenging the evidence of his identity as a perpetrator. Lovell also argues that there was insufficient evidence that the second person in the house intended the crimes of armed robbery, unlawful imprisonment, and torture.

In viewing the evidence in the light most favorable to the prosecution, we find that the prosecutor established that Lovell purchased a hard hat, pry bar, and work gloves at a hardware store the day before the crimes. In reference to the pry bar, the hardware store manager heard Lovell's companion inquire: "are you going to buy that tool to beat that guy's ass[?]" Lovell was identified as the individual who rented the vehicle seen in the victim's driveway at the time the crimes occurred. Cellular telephone call logs showed that Lovell's telephone was in the vicinity of the victim's house and that numerous calls were made to Riley at the time of the crime. While the victim was bound (false imprisonment), Riley severely beat him (torture) and poked him with a knife while stealing his coin collection (armed robbery). While this was occurring, the other individual in the house threatened to kill the victim if he did not reveal the location of his money. When Lovell and Riley met Wilson the next day, Wilson heard them talking about how they were going to sell coins, and heard Riley berate Lovell for the method he used to ransack drawers.

Identity may be shown by either direct testimony or circumstantial evidence. Here, ample circumstantial evidence exists, as set forth above, identifying Lovell as one of the perpetrators of the charged offenses.

*Riley*, 2011 WL 4501765, at *7–8. (internal citation and footnote omitted).

Under Michigan law, "[T]he identity of a defendant as the perpetrator of the crimes charged is an element of the offense and must be proved beyond a reasonable doubt." *Byrd v. Tessmer*, 82 F. App'x 147, 150 (6th Cir. 2003) (citing *People v. Turrell*, 181 N.W.2d 655, 656 (Mich. Ct. App. 1970)). Michigan law further provides that "'[c]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime.'" *People v. Nowack*, 614 N.W.2d 78, 81 (Mich. 2000) (quoting *People v. Carines*, 597 N.W.2d 130 (1999)). As the Sixth Circuit has stated: "Circumstantial evidence alone is sufficient to support a conviction, and 'it is not necessary for the evidence at trial to exclude every reasonable hypothesis except that of guilt.'" *Johnson v. Coyle,* 200 F.3d 987, 992 (6th Cir. 2000) (quoting *United States v. Reed*, 167 F.3d 984, 992 (6th Cir. 1999)) (additional citations and brackets omitted).

The state court reasonably concluded that circumstantial evidence established Petitioner's identity as the second offender and that his actions at the crime scene aided and abetted Mr. Riley. Because there were multiple pieces of evidence to establish Petitioner's identity as one of the perpetrators of the offenses, the state court did not unreasonably apply the *Jackson* standard in rejecting Petitioner's sufficiency of evidence claim. *See Moreland v. Bradshaw,* 699 F.3d 908, 919-21 (6th Cir. 2012).

The state court also reasonably concluded that there was sufficient evidence for a rational trier of fact to conclude that Petitioner aided and abetted Mr. Riley with the crimes, including the torture charge. As noted above, to be convicted as an aider and abettor, the defendant must either possess the required intent to commit the crime or have participated while knowing that the principal had the requisite intent; such intent may be inferred from circumstantial evidence. *See Long v. Stovall,* 450 F. Supp. 2d 746, 753 (E.D. Mich. 2006); *People v. Wilson*, 196 Mich. App. 604, 614; 493 N.W.2d 471 (1992). The intent of an aider and abettor is satisfied by proof that he knew the principal's intent when he gave aid or assistance to the principal. *People v. McCray*, 533 N.W. 2d 359, 361 (Mich. Ct. App. 1995) (citations omitted). An aider and abettor's state of mind may be inferred from all of the facts and circumstances, including close association between the defendant and the principal, the defendant's participation in the planning and execution of the crime, and evidence of flight after the crime. *People v. Turner*, 540 N.W.2d 728, 733-34 (Mich. Ct. App. 1995) (citations omitted).

In Petitioner's case, there was sufficient evidence to establish that he aided and abetted Mr. Riley in all of the offenses for which he was convicted. This includes the torture conviction, even if Petitioner never actually touched the victim. Petitioner is not entitled to relief on his sufficiency of the evidence claim.

### E. Sentencing Guideline Claim

Petitioner argues that he was denied due process when inaccurate

information in the presentence report was used to support an upward departure in

his sentences.  Specifically, Petitioner refers to the report's reference to him as a

"gyps[y]" "who travel[s] throughout the country, including all the states Lovell …

has worked in, making a living employing scams in the home improvement trade."

(Pet. at 40-41, ECF No. 1-1 at Pg ID 58-59.)  He also refers to the report's

statement that he has a history of exploiting elderly people, which the trial judge

described as "a pattern of, of practices of preying on good natured citizens who are

willing to give tradesman work who come to their door.  And have only to be

brutalized or swindled ultimately and almost killed because … good heartedness

and giving work to solicitors."  (12/11/09 Hr'g Tr. at 54-55 ECF No. 5-16 at Pg ID

2321-22.)

Claims concerning the trial court's calculation of a defendant's sentencing

guidelines range under state law are state-law claims and typically not cognizable

in federal habeas corpus proceedings.  *See Hutto v. Davis*, 454 U.S. 370, 373-74

(1982) (federal courts normally do not review a sentence for a term of years that

falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213

F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to

sentencing is not subject to federal habeas relief).  However, "an alleged violation

of state law could, potentially, 'be sufficiently egregious to amount to a denial of

equal protection or due process of law guaranteed by the Fourteenth Amendment.'" *Koras v. Robinson*, 123 F. App'x 207, 213 (6th Cir. 2005) (quoting *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003)) (additional quotation marks and citation omitted). A sentence may violate due process if it is based upon "material 'misinformation of constitutional magnitude.'" *Koras*, 123 F. App'x at 213 (quoting *Roberts v. United States*, 445 U.S. 552, 556 (1980)); *see also United States v. Tucker*, 404 U.S. 443, 447 (1972); *Townsend v. Burke*, 334 U.S. 736, 741 (1948).

To prevail on such a claim, the petitioner must show that (1) the information before the sentencing court was materially false, and (2) the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Koras*, 123 F. App'x at 213 (quoting *United States v. Stevens*, 851 F.2d 140, 143 (6th Cir. 1988)). The sentencing court demonstrates actual reliance on misinformation when the court give "explicit attention" to it, "found" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

The sentencing transcript does not reflect the state trial court's reliance on information Petitioner claims to be false. When speaking about Petitioner, specifically, the trial judge did not state that Petitioner had travelled around the

United States taking advantage of elderly homeowners or scamming homeowners. What the trial court discussed instead was Mr. Riley's out-of-state conduct after the incident in question which undisputedly did involve taking advantage of several elderly homeowners.

With respect to Petitioner, the trial judge referred only "in passing" to "issues that occurred in Midland county and Tawas and Clair" and "those business practices[.]" (12/11/09 Hr'g Tr. at 56, ECF No. 5-16 at Pg ID 2324)  However, Petitioner does not show that this information was false.  Moreover, the transcript reflects that the facts primarily influencing the trial court's sentencing decision were those presented at trial, which Petitioner has not shown to be false.  (*See id.* at 54-58, Pg ID 2321-2325.)  Specifically, the trial court concluded that Petitioner posed "a clear and present danger" warranting sentences above the guidelines due to his conduct with respect to the victim, including Petitioner's primary role in planning and "put[ting] in motion" the confrontation, robbery and severe beating of the victim, not putting a stop to the beating despite seeing and hearing what was happening, and leaving the victim for dead, bound and gagged in his basement. (*Id.*)  To the extent the trial court relied on any materially false information, it is not "misinformation of constitutional magnitude."  *See supra.*

Petitioner is not entitled to habeas relief based on his sentencing claim.

### F.    Ineffective Assistance of Appellate Counsel Claim

In his final claim, Petitioner contends that his appellate counsel was ineffective for failing to raise on direct appeal the issues presented in his motion for relief from judgment.

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). Court appointed counsel, however, does not have a constitutional duty to raise every nonfrivolous issue a defendant requests. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). The issues presented in the motion for relief from judgment were found to be meritless. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

The Court therefore concludes that Petitioner is not entitled to habeas relief based on his ineffective assistance of appellate counsel claim.

## IV. Conclusion & Certificate of Appealability

For the reasons set forth above, the Court concludes that Petitioner is not entitled to habeas relief pursuant to § 2254. Therefore, the Court is denying Petitioner's application for the writ of habeas corpus.

In order to appeal this decision, Petitioner must obtain a certificate of appealability. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of

appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327.

Reasonable jurists could not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further. The Court therefore declines to issue a certificate of appealability.

Accordingly,

**IT IS ORDERED** that the Petition for a Writ of Habeas Corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability is **DENIED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: August 21, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, August 21, 2018, by electronic and/or

U.S. First Class mail.

s/ R. Loury
Case Manager

28